UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| BILL W. WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:07CV00056 AGF |
| | ) | |
| CITY OF SALISBURY, MISSOURI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court[1] for findings of fact and conclusions of law on Plaintiff's claim under the Missouri Sunshine Law, Mo. Rev. Stat. § 610.010-.225 (Supp. 2009) (also called the Open Meetings Law). This action arose out of Plaintiff's termination as a police officer for the City of Salisbury, Missouri, pursuant to a vote by the City's Board of Aldermen (the "Board") at a meeting on October 11, 2007. Plaintiff asserted one federal claim -- that his termination violated his First Amendment rights, and two state claims -- that his termination was in violation of public policy, and that the procedures surrounding his termination violated Missouri's Sunshine Law. Plaintiff named the City as a Defendant, and also named the Mayor and the six Aldermen of the City, all in their official and individual capacities.

Plaintiff claimed that Defendants had violated the Missouri Sunshine Law by (1)

---

[1] The undersigned originally had jurisdiction as a United States Magistrate Judge by consent of the parties under 28 U.S.C. § 636(c), but has since been appointed a United States District Judge.

failing to provide notice in the agenda for the October 11, 2007 meeting that the budget of the City's Police Department would be discussed at the meeting, (2) going into closed session without announcing the reason why, and (3) then discussing in closed session the budgetary issue. Plaintiff claimed that the violations were purposeful and he sought statutory penalties, attorney's fees, as well as reinstatement and lost wages and benefits.

Prior to trial, Defendants were granted summary judgment on the state public-policy claim. The case proceeded to trial, with the parties and the Court in agreement that evidence on the remaining two claims would be presented at trial, and that the First Amendment claim would be submitted to the jury, while the Missouri Sunshine Law claim would be submitted to the Court for findings of fact and conclusions of law.

Following a three-day trial, the jury returned a verdict in Defendants' favor on the First Amendment claim. In doing so, the jury determined that Plaintiff's statements in letters regarding the Mayor directing Plaintiff to refrain from stopping drunk drivers on the streets of the City did not play a role in the decision to discharge Plaintiff, or that the decision to discharge Plaintiff would have been made regardless of the letters.

Following the jury verdict, the parties were given the opportunity to present further testimony to the Court regarding the Sunshine Law claim. Neither party elected to present further testimony, but the parties did submit proposed findings of fact and conclusions of law on that claim. Defendants also requested that the Court decline to exercise supplemental jurisdiction over the Sunshine Law claim, relying, in part, on a case that was pending before the Missouri Supreme Court that raised a different, but

potentially related, issue under the Sunshine Law. The Court denied Defendants' request to decline to exercise jurisdiction, but did stay further proceedings pending the Missouri Supreme Court's decision. The Court now makes the following Findings of Fact and Conclusions of Law in connection with Plaintiff's Sunshine Law claim.

## FINDINGS OF FACT

On October 11, 2007, the Board met during a regular session. The agenda of topics to be discussed in open session, which was posted pursuant to normal and routine procedures, did not include as a topic either the budget or the possible reduction of the Police Department by one full-time officer due to budget problems. The following notice appeared at the bottom of the agenda:

> *The City of Salisbury Board of Aldermen may enter into an executive session at this meeting if such action is approved by a majority of the members present who constitute a quorum, to discuss personnel matters, the lease or purchase or sale of real estate, or legal or privileged matters under Sections 610.021(1), (2) and (3). RSMo. (Doc. 87-1.)*

The meeting began at 6:00 p.m. At 8:05 p.m., the Board voted in favor of a motion to adjourn the regular meeting and to go into closed session. The minutes do not reflect that a reason for the closed session was given, nor does the testimony suggest that any specific reason was given. The closed session was called to order at 8:25 p.m. It is clear from the trial testimony that during the closed session, Plaintiff's performance was discussed, including several specific instances of alleged misconduct. Several of the individuals at the closed meeting expressed concerns regarding Plaintiff's performance as a police officer, and they discussed whether Plaintiff should be discharged.

At least one of the participants indicated that he would like to receive more information. One or more of the individuals at the closed meeting then stated that cost savings could be realized from eliminating Plaintiff's position and, noting that the City had budget problems, suggested that the elimination of Plaintiff's position was a means to address both the concerns regarding Plaintiff's performance and the continuing budgetary problems. While the impact on the budget was discussed, the Court finds that all such discussion was in the context of determining whether Plaintiff should be terminated for alleged incidents of inappropriate behavior.

Upon returning to open session, there was a discussion concerning "the tight budget now existing with the City and that it would probably exist in the future." Defendant Mitchell moved to eliminate one full-time police officer position, that position being the one held by Plaintiff, who had the least seniority, effective immediately. The motion was passed by unanimous vote of the Board members. Some of the individual Board members felt that couching their action in this fashion was out of consideration for Plaintiff, so that he would be in a position to state his position had been eliminated, as opposed to stating that he had been fired. The meeting was then adjourned at 10:40 p.m. All the individual Defendants and the City Attorney attended both the open and closed sessions.

At trial, a witness for Defendants testified that the Board would frequently go into executive session to discuss the hiring or firing of personnel, and then return to open session to take the vote on the personnel decision. The City Attorney also testified that

he reviewed and approved the notice of the meeting. He was also present at the meeting, including when the vote was taken to go into closed session, and was present at the closed session as well. He knew that the Board members relied upon him for compliance with the Sunshine Law, and did not believe, at the time, that there was any violation.

## **CONCLUSIONS OF LAW**

The Missouri Sunshine Law states: "It is the public policy of this state that meetings, records, votes, actions, and deliberations of public governmental bodies be open to the public unless otherwise provided by law." Mo. Rev. Stat. § 610.011.1. In furtherance of this policy, "[s]ections 610.010 to 610.200 shall be liberally construed and their exceptions strictly construed to promote this public policy." Id.

The statute provides that "[a]ll public governmental bodies shall give notice of the time, date, and place of each meeting, and its tentative agenda, in a manner reasonably calculated to advise the public of the matters to be considered . . . ." Mo. Rev. Stat. § 610.020.1. Section 610.021 sets forth the exceptions to the open-meeting requirement, with subsection (3) authorizing closed meetings to the extent they relate to "[h]iring, firing, disciplining or promoting of particular employees by a public governmental body when personal information about the employee is discussed or recorded." The statute defines "personal information" as "information relating to the performance or merit of individual employees." Id. § 610.021.3.

Section 610.022.1, states as follows:

Except as set forth in subsection 2 of this section, no meeting or vote may

> be closed without an affirmative public vote of the majority of a quorum of the public governmental body. The vote of each member of the public governmental body on the question of closing a public meeting or vote and the specific reason for closing that public meeting or vote by reference to a specific section of this chapter shall be announced publicly at an open meeting of the governmental body and entered into the minutes.

Section 610.022.2 provides as follows:

> A public governmental body proposing to hold a closed meeting or vote shall give notice of the time, date and place of such closed meeting or vote and the reason for holding it by reference to the specific exception allowed pursuant to the provisions of section 610.021. Such notice shall comply with the procedures set forth in section 610.020 for notice of a public meeting.

Section 610.027.2 provides that once a party seeking judicial enforcement of the Sunshine Law demonstrates that the governmental body in question held a closed meeting, the body and its members bear the burden of persuasion to demonstrate compliance with sections 610.010 to 610.026.

With regard to penalties, section 610.027.3 provides that "[u]pon a finding by a preponderance of the evidence that a public governmental body or a member of a public governmental body has *knowingly* violated sections 610.101 to 610.026" said body or person "shall be subject to a civil penalty in an amount up to one thousand dollars," and the court "*may* order the payment . . . of all costs and reasonable attorneys fees." (emphasis added). Section 610.027.4 provides that if a plaintiff establishes by a preponderance of the evidence that such public body or member thereof "has *purposely* violated sections 610.010 to 610.026," said body or member thereof "shall be subject to a civil penalty in an amount up to five thousand dollars," and the court "*shall* order the

payment by such body or member of all costs and reasonable attorneys fees to any party successfully establishing such a violation." (emphasis added).

In addition, Section 610.027.5 provides that upon a finding by a preponderance of the evidence that a public governmental body has violated any such section, the court shall void any action taken in violation of such sections "if the court finds under the facts of the particular case that the public interest in the enforcement of the policy of sections 610.010 to 610.026 outweighs the public interest in sustaining the validity of the action taken in the closed meeting, record or vote." See generally, R.L. Polk & Co.v. Mo. Dep't of Revenue, 309 S.W.3d 881, 886 (Mo. Ct. App. 2010); Great Rivers Envtl. Law Ctr. v. City of St. Peters, 290 S.W.3d 732, 733-34 (Mo. Ct. App. 2009).

"Missouri's well-established public policy is 'that meetings, records, votes, actions, and deliberations of public governmental bodies be open to the public unless otherwise provided by law.' Section 610.011.1." Great Rivers, 290 S.W.3d at 733. The legislature itself provided that to accomplish this public policy, provisions of the Sunshine Law are to be construed liberally, and the statutory exceptions are to be construed narrowly. Id. at 733-34. The civil fine and attorney's fee provisions, however, being penal in nature, should be narrowly construed. Spradlin v. City of Fulton, 982 S.W.2d 255, 261-62 (Mo. 1998); Kan. City Star Co. v. Shields, 771 S.W.2d 101, 104 (Mo. Ct. App. 1989).

The Court concludes that a violation of Section 610.022.1 occurred when the reason for the decision at the October 17, 2007 meeting to go to closed session was not

disclosed. While notice of such a possibility on multiple grounds was provided in advance of the public meeting, the precise reason for this closed session was not publicly announced at the open meeting, by referencing the specified exception provided under the statute, nor was the basis reflected in the minutes.

The Court further concludes, based upon the testimony and the evidence at trial, and having had an opportunity to observe the demeanor and evaluate the credibility of the witnesses, that no improper budget discussion took place in the closed session. Although the fiscal effect of a decision to terminate Plaintiff's position was discussed, this was not the essence of the discussion in question at the closed session. Rather, the essence of the discussion was Plaintiff's performance and whether he should be terminated. No budget was being amended, approved, or debated, and the impact on the budget was discussed solely in the context of whether to fire Plaintiff. Construing the exception narrowly, the Court concludes that the discussion in question came within the statutory exception in Section 610.021(3), of a matter related to "hiring, firing or disciplining or promoting" a particular employee "when personal information about the employee is discussed or recorded."

Having determined that a violation of Section 610.022.1 did take place, due to the failure to announce the reason for the closed session, the Court must determine whether the violation occurred under a standard that could permit civil penalties, attorney's fees and costs, or other relief. In his complaint and proposed findings and conclusions submitted following the close of the evidence, Plaintiff asserts that he is entitled to relief

because Defendants' actions were done "purposely." He now also asserts that he has not limited his claims to "purposeful" violations, but rather also alleged "knowing" violations of the statute.

The Court takes issue with Plaintiff's attempt, at this late stage, to recover based on claims that the alleged violations were done "knowingly" as opposed to "purposely." In his Complaint, Plaintiff alleged that Defendants "purposefully" and "intentionally" violated the Sunshine Law.[2] In argument to the Court at the time of trial, Plaintiff's counsel reiterated Plaintiff's contention that the violation was purposeful. Responding to Plaintiff's trial argument, defense counsel plainly delineated the different state of mind standards in the statute: a violation, which could permit a court to undo the action taken at the meeting; a knowing violation, which could support a civil penalty up to $1000 and attorney's fees; and a purposeful violation, which could support a civil penalty up to $5000 and attorney's fees. Defense counsel stated his understanding that Plaintiff was asserting that the violations were "purposeful," and Plaintiff's counsel never suggested otherwise.

Although the Court does not believe that Plaintiff fairly asserted a claim for a "knowing" violation of the Sunshine Law, either in his complaint or at the time of trial,

---

[2] Indeed, in paragraph 11 of his Proposed Findings and Conclusions of Law (Doc. #85), Plaintiff specifically proposes that this Court find, "Plaintiff further alleges that Defendants' actions were done purposely, intentionally and maliciously as he believes Defendants wanted to terminate his employment without the public knowing in advance that such action was going to occur."

the Court will nonetheless address the issue. The statute itself does not define "knowingly" or "purposely." In Spradlin, 982 S.W.2d 255, which was decided prior to the 2004 amendment to the statute, the Missouri Supreme Court explained that the word "purposely" in this context is used in its ordinary and usual sense and "makes clear that more than a mere intent to engage in the conduct resulting in the violation is necessary. To purposely violate the open meetings law a member of a public governmental body must exhibit a 'conscious design, intent, or plan' to violate the law and do so 'with awareness of the probable consequences.'" Id. at 262.

The parties have not cited to the Court any cases that define "knowingly" in the context of the Sunshine Law.[3] This Court believes, however, that the Missouri Supreme Court would hold that the drafters did not intend to impose the specter of civil penalties and attorneys' fees on a strict liability basis. In the recent case of R.L. Polk, 309 S.W.3d at 881, the Missouri Court of Appeals found that the state Department of Revenue had violated the Sunshine Law by charging an across-the board "per record" fee for public

---

[3] In defining culpable states of mind for purposes of criminal violations, the Missouri legislature defined "knowingly" as follows:

A person "acts knowingly", or with knowledge,

(1) With respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist; or

(2) with respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result.

Mo. Rev. Stat. § 562.016.3.

records provided electronically over the internet. The Appellate Court, however, specifically recognizing the various mental states and corresponding penalty provisions in the Sunshine Law, held that this violation was not a "purposeful or knowing violation." Id. at 887. The Appellate Court based this holding on the definition for "purposely" in Spradlin, 982 S.W.2d at 262. Id. Indeed, the trial court in R.L. Polk had held that "the knowing or purposeful violation described in subsections 3 and 4 of Section 610.027 requires a purpose to violate a statutory provision <u>or actual knowledge that the conduct violated a statutory provision</u>." See Br. of Appellants - Cross-resp'ts Dep't of Revenue & Dir. of Revenue, Case No. WD70973, 2010 WL 718551, at *11 (Mo. Ct. App.) (emphasis added). The trial court's ruling was affirmed on appeal.

Similarly, here, based on the testimony at trial, the Court does not find by the preponderance of the evidence that the above-identified violation of the Sunshine Law in this case was done "knowingly" or "purposely." See Great Rivers, 290 S.W.3d at 734 (affirming the denial of attorney's fees and costs where the evidence did not show, by the preponderance of the evidence, that the violation was knowing or purposeful).

Here there was no credible evidence that any of the Defendants had a purpose or intent to violate the Sunshine Law. Nor was there any credible evidence that any Defendant knew that his actions might violate the Law. To the contrary, the City Attorney, who was present at the open and closed sessions of the meeting, and on whom the Board members relied to assure compliance with the Sunshine Law, did not believe any violation had occurred. Cf. Lopez v. Three Rivers Elec. Coop., Inc., 26 S.W.3d 151

(Mo. 2000) (finding, in another context, that the evidence did not show a "knowing" violation of duty by failing to take certain action, where the defendant had obtained the advice of counsel that indicated that no regulation or statute required the action to be taken). The Court concludes that the failure to announce the reason or specific statutory exception for going into closed session was inadvertent, and was not "knowing" within the meaning of the statute.

The Court would not exercise its discretion to award attorney's fees, costs, or any penalty, in any event. Section 610.027.3 directs the Court to determine the amount of a penalty "by taking into account the size of the jurisdiction, the seriousness of the offense, and whether the public governmental body or member . . . has violated [the statute] previously." The Court takes judicial notice that the City of Salisbury is a 4th Class City, with a population of less than 2,000. In relative terms, the offense itself was not a very serious one, as advance notice that the Board might go into closed session was given, the statute would not have required disclosure of details other than the specific exemption at issue, and no improper discussion took place during the closed session. Moreoever, no evidence was presented of any previous violation. While one hopes and presumes that the City will not commit such a violation in the future, the Court does not believe that attorney's fees, costs or any penalty are warranted here.

Likewise, the Court concludes that if there were a violation of Section 610.011 (open meeting requirement) or Section 610.020.1 (contents of notice of meeting) arising from the fact that the effect on the budget of eliminating a police officer's position was

discussed, the Court does not find by a preponderance of the evidence that any such violation was committed either "knowingly" or "purposely" as those terms are used in the statute.  See R.L. Polk, 309 S.W.3d at 886-87.

Finally, the Court concludes, under Section 610.017.5, that the public interest in enforcement of the policy underlying Section 610.020.1 does not outweigh the public interest in sustaining the validity of the action taken in the closed meeting -- namely, the elimination of Plaintiff's position and his consequent termination.  This is especially so as the notice of the meeting did in fact provide notice that a closed meeting to discuss personnel actions might occur, and the discussion fell within a statutory exception.  Further, the City has an important interest in overseeing the conduct of its police officers, and the jury here found, as a matter of fact, that Plaintiff was not terminated for improper purposes, as alleged in the complaint.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff is not entitled to any relief under the Missouri Sunshine Law.

All claims against all parties having been resolved, a separate final Judgment shall accompany this Memorandum and Order.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of July, 2010.